COURT OF APPEALS
DECISION
DATED AND FILED

August 13, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2020AP93**

Cir. Ct. No.  2019ME73

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT IV**

IN THE MATTER OF THE MENTAL COMMITMENT OF R. J.:

ROCK COUNTY,

   PETITIONER-RESPONDENT,

 V.

R. J.,

   RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Rock County: DANIEL T. DILLON, Judge. *Affirmed.*

¶1      GRAHAM, J.[1]   R.J. was involuntary committed for treatment for six months pursuant to WIS. STAT. § 51.20, and he was subsequently recommitted for a period of one year.  In this appeal of his initial commitment, R.J. argues that the County failed to meet its burden to prove that he was dangerous.  I conclude that this appeal is moot and decline to reach its merits; therefore, I affirm.

## BACKGROUND

¶2      One night in March of 2019, a woman called Janesville police to report that she had nearly hit a man who was standing in the middle of a dimly lit street.  When police responded, they found R.J., a man they knew to be homeless, walking back and forth across the street.  R.J. told the officers that he was trying to escape from snipers sent by his prior landlord.  I refer to this incident as the "traffic incident" throughout this opinion.

¶3      Based on the traffic incident and another incident earlier the same day in which he made similar statements in a church, the County detained R.J. on an emergency basis under WIS. STAT. § 51.15(1).  It then sought to involuntarily commit him for six months pursuant to WIS. STAT. § 51.20.  To commit an individual under that statute, the County must prove by clear and convincing evidence that the individual is mentally ill, a proper subject for treatment, and dangerous.  *See* § 51.20(1)(a).  At a hearing held a few days later, the circuit court determined that there was probable cause to support a commitment based on the testimony of one of the officers who responded to the traffic incident, and also on

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

the testimony of a physician who had examined R.J. The matter then proceeded to a bench trial.

¶4 At trial, the County presented the expert testimony of two doctors who had met with R.J. while he was detained. The first witness, Dr. Leslie Taylor, had examined R.J. and reviewed his hospital records. She testified that R.J. suffered from an unspecified psychotic disorder and that his condition could be improved by medication that he would not voluntarily take if released. As to dangerousness, Dr. Taylor testified that R.J. "would certainly be able to" satisfy his basic health needs, but that he "probably would not be safe in the community" because "he would likely not be able to figure out where to go to stay in a hotel or how to buy food or where he would get money." Although she had no firsthand knowledge of the traffic incident that precipitated R.J.'s detention, she testified about her understanding of what had occurred. R.J.'s counsel did not object to this testimony as hearsay, and in fact questioned Dr. Taylor about the traffic incident.

¶5 The County also called Dr. James Black, who had not examined R.J. because R.J. had refused his interview request. Dr. Black's testimony was based on his brief initial encounter with R.J. and his review of R.J.'s medical records. Like Dr. Taylor, Dr. Black testified that he believed R.J. was mentally ill, a proper subject for treatment, and dangerous. Also like Dr. Taylor, Dr. Black testified about the traffic incident despite a lack of firsthand knowledge. Again, R.J.'s counsel did not object to this testimony and instead questioned Dr. Black about the incident. Finally, Dr. Black testified about an incident several months earlier in Winnebago where R.J. had "gotten into an altercation with someone in public"; this incident had led to a prior commitment proceeding that was ultimately dismissed.

¶6    The County offered each doctor's report into evidence. Both reports contained secondhand accounts of the traffic incident, but R.J. did not object to the admission of either report. Both were received.

¶7    After the close of the evidence, R.J argued in closing that the County had failed to meet its burden to prove that he was dangerous. He explained that the only facts about the traffic incident came from the experts' secondhand accounts, and he cited *S.Y. v. Eau Claire Cty.*, 156 Wis. 2d 317, 327, 457 N.W.2d 326 (Ct. App. 1990) for the proposition that the expert accounts were hearsay and therefore "inadmissible" to prove dangerousness. In its oral ruling, the circuit court appeared to characterize this argument as a "hearsay objection" and stated that it was "well taken." Nevertheless, the court determined that there was "ample evidence" to conclude that R.J. was dangerous "without resorting to the hearsay concern" that R.J. had raised. The court ordered R.J. to be committed for a period of six months.

¶8    The appeal of the initial commitment was significantly delayed.[2] Meanwhile, several months into the initial commitment, R.J. was transferred from an inpatient to an outpatient program, and soon after the transfer, he went missing. When located weeks later, he allegedly had stopped taking his antipsychotic medication, had become "increasingly paranoid and agitated," and threatened to kill hospital staff. The County petitioned for a one-year recommitment, which the court granted in September 2019.

---

[2] We extended R.J.'s appeal deadlines twice, first due to the State Public Defender's difficulties finding appellate counsel to represent R.J., then again due to his appointed appellate counsel's difficulties contacting him. R.J.'s notice of appeal was filed in January 2020, and by that time, his initial commitment had expired.

¶9    R.J. now appeals his initial commitment order, arguing that the County failed to meet its burden to show dangerousness.  R.J. did not appeal the recommitment order, which extends through September 2020.

## DISCUSSION

¶10    In an involuntary commitment proceeding, the County must prove by clear and convincing evidence that the individual is mentally ill, a proper subject for treatment, and dangerous.  WIS. STAT. § 51.20(1)(a).  To prove dangerousness in an initial commitment, the County must satisfy at least one of five standards set forth in § 51.20(1)(a)(2).  Here, the County argued that R.J. was a danger to himself under § 51.20(1)(a)2.c, which requires proof of "such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to [the individual] or other individuals."

¶11    R.J. argues that the County failed to introduce sufficient evidence to prove dangerousness under WIS. STAT. § 51.20(1)(a)2.c.  R.J.'s argument is based on his premise that his trial counsel "objected" to the doctors' testimony about the traffic incident and the circuit court "correctly concluded that the doctors' testimony" about that incident was "inadmissible hearsay."  Without admissible evidence of this incident, R.J. argues, the County failed to prove a pattern of recent acts showing that he was dangerous.  He also argues that the County failed to prove that there was a "substantial probability" that his impaired judgment would result in his physical impairment or injury.  He develops no argument that the

County still failed to meet its burden to prove dangerousness even if evidence of the traffic incident was properly admitted.[3]

¶12 For reasons explained below, I conclude that R.J.'s appeal is moot. Accordingly, I do not address his sufficiency argument beyond noting that it appears to be based at least in part on a misunderstanding of the record. It is true that neither doctor had firsthand knowledge of the traffic incident, but it is not true that R.J's trial counsel objected to admission of the doctors' secondhand accounts of this incident. To the contrary, the circuit court received this evidence without objection, both through the doctors' testimony and through their written reports. To be sure, R.J.'s counsel argued in closing that this evidence was "inadmissible hearsay," but this argument cannot properly be characterized as an objection to its admission. By that time, the evidence had long since been admitted without objection,[4] and R.J.'s own counsel even questioned the doctors about the traffic incident. Puzzlingly, R.J. appears to contend that testimony that he himself elicited should be disregarded as inadmissible.

¶13 Having made these observations, I now turn to the County's argument that R.J.'s appeal is moot. "An issue is moot when its resolution will have no practical effect on the underlying controversy." ***PRN Assocs. LLC v.***

---

[3] In fact, R.J. asserts that "perhaps the county could have met its burden" if it had "presented a witness who had firsthand knowledge" of that incident.

[4] *See **Allen v. Allen***, 78 Wis. 2d 263, 270, 254 N.W.2d 244 (1977) ("A failure to make a timely objection constitutes a [forfeiture] of the objection."). Although the circuit court described R.J.'s argument as a "hearsay objection" and at times suggested that it would ignore the doctors' hearsay accounts of the traffic incident, it is not clear to me that the court took the unusual step of excluding evidence after it had already been admitted. Had it done so, the County would have been unfairly deprived of the opportunity to correct any error. *See, e.g.*, ***Virgil v. State***, 84 Wis. 2d 166, 193-94, 267 N.W.2d 852 (1978) (one reason why objections must be timely is to allow the opportunity to correct error).

*State, Dep't of Admin.*, 2009 WI 53, ¶25, 317 Wis. 2d 656, 766 N.W.2d 559. Appellate courts generally decline to address issues that are moot unless review is nevertheless warranted based on an exception to the mootness doctrine.[5] *See Marathon Cty. v. D.K.*, 2020 WI 8, ¶19, 390 Wis. 2d 50, 937 N.W.2d 901. For the reasons explained below, I conclude that R.J.'s sufficiency challenge is moot and decline to address it.

¶14 The maximum length of an initial commitment is six months; after that, the commitment expires unless the county successfully petitions for recommitment. WIS. STAT. § 51.20(13)(g)1. Each subsequent recommitment may last up to one year. *Id.* Because commitment orders are relatively short in duration, it is often the case that an order has already expired by the time the appellate court has a chance to decide the appeal. *See Waukesha Cty. v. S.L.L.*, 2019 WI 66, ¶16, 387 Wis. 2d 333, 929 N.W.2d 140. There are two possibilities at that point: either the individual has been released from the involuntary commitment, *see D.K.*, 390 Wis. 2d 50, or the individual has been recommitted pursuant to a new order, *see Portage Cty. v. J.W.K.*, 2019 WI 54, ¶29, 386 Wis. 2d 672, 927 N.W.2d 509. Accordingly, mootness is often a central issue in appeals of commitment orders, and appellate courts frequently address whether such orders are moot and the exceptions to the doctrine in this context. Three recent decisions

---

[5] Our cases generally recognize five exceptions: "(1) the issue is of great public importance; (2) the issue involves the constitutionality of a statute; (3) the issue arises often and a decision from this court is essential; (4) the issue is likely to recur and must be resolved to avoid uncertainty; or (5) the issue is likely of repetition and evades review." *Marathon Cty. v. D.K.*, 2020 WI 8, ¶19, 390 Wis. 2d 50, 937 N.W.2d 901.

of our supreme court addressing these topics are particularly relevant to this appeal, and I briefly summarize those decisions here.[6]

¶15    In ***J.W.K.***, the court considered a scenario in which the committed individual had been twice recommitted after the expiration of the initial commitment order. ***Id.***, ¶13 & n.5. J.W.K. appealed the first of the recommitment orders. His notice of appeal was significantly delayed, and by the time he filed it, the first recommitment order was no longer in effect and had been replaced by the second recommitment order, which he did not appeal. ***Id.***, ¶¶6-8, 13.

¶16    J.W.K. argued that the evidence was insufficient to enter the first recommitment order, and that his appeal was not moot because "a recommitment order is merely a continuation of the initial commitment and creates a chain linking each prior commitment order to any extension that follows it." ***Id.***, ¶15. By J.W.K.'s reasoning, a successful challenge to his first recommitment order would render any subsequent orders invalid. ***Id.*** The court rejected this argument. It concluded that the initial commitment and each subsequent commitment is "independently [] based upon current, dual findings of mental illness and dangerousness; accordingly, the sufficiency of the evidence supporting prior orders has no impact on any subsequent order." ***Id.***, ¶21; *see also id.*, ¶24 ("Each extension hearing requires the County to prove the same elements with the same quantum of proof required for the initial commitment."). On that basis, it

---

[6] Many other appellate decisions have also addressed mootness in commitment appeals. *See, e.g.*, ***Waukesha Cty. v. S.L.L.***, 2019 WI 66, 387 Wis. 2d 333, 929 N.W.2d 140 (concluding that three issues in an appeal of a commitment order were moot, but choosing to reach the merits of two of those issues); ***Christopher S. v. Winnebago Cty.***, 2016 WI 1, ¶32, 366 Wis. 2d 1, 878 N.W.2d 109 (concluding that an appeal of a commitment order was moot but choosing to reach the merits); ***G.S. v. State***, 118 Wis. 2d 803, 348 N.W.2d 181 (1984) (concluding that an appeal of an involuntary commitment and medication order was moot and declining to reach the merits).

concluded that J.W.K.'s appeal of the first recommitment order was moot. *Id.*, ¶28.

¶17    The *J.W.K.* court noted that its reasoning was limited to cases where no collateral consequences are raised. *Id.*, ¶28 n.11.  It suggested that an appeal of an expired commitment order might not be moot if the committed individual continued to be affected by collateral consequences of the order. *Id.*  The court mentioned firearms bans[7] and liability for the costs of care[8] as potential collateral consequences of commitments. *Id.*

¶18    Then, in *D.K.*, the court addressed this open question and considered whether collateral consequences can "render an expired commitment not moot." 390 Wis. 2d 50, ¶22.  D.K. had been committed for six months, after which he was released from commitment.  The court took up his appeal after his commitment order had already expired; D.K. argued that his appeal was not moot due to the firearms ban, the potential liability for costs of care, and "the negative stigmas often attached to mental commitment." *Id.*, ¶20.  The court concluded that D.K.'s commitment was "not a moot issue because it still subjects him to the collateral consequence of a firearms ban" and a decision in his favor "would void the firearms ban." *Id.*, ¶25.  The court expressly declined to decide whether the other collateral consequences that D.K. had raised, liability for care and stigma, were sufficient to overcome mootness. *Id.*, ¶25 n.7.

---

[7] Federal law prohibits individuals who have been committed from owning firearms.  18 U.S.C. § 922 (g)(4) (2020); *see also* **D.K.**, 390 Wis. 2d 50, ¶¶22, 24-25.

[8] Committed individuals may be liable for the costs of their care to the extent that they can pay.  WIS. STAT. § 46.10(2)-(3); *see also* **Portage Cty. v. J.W.K.**, 2019 WI 54, ¶28 n.11, 386 Wis. 2d 672, 927 N.W.2d 509; **D.K.**, 390 Wis. 2d 50, ¶20.

¶19    Most recently, in ***Langlade Cty. v. D.J.W.***, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277, the court considered a scenario in which the committed individual had passed away during the course of the appeal.  The parties agreed that the case was moot, but D.J.W.'s attorney argued that the court should nevertheless decide the issue because there were exceptional circumstances.  ***Id.***, ¶26 n.5.  The court agreed, stating that it would reach the moot issue because "the question of the necessary evidence to support an involuntary commitment is of great importance yet often evades appellate review."  ***Id.***  But this conclusion was not unanimous; one dissenting justice determined that the appeal was moot and would not have addressed its merits.  ***Id.***, ¶123 (R.G. Bradley, dissenting).[9]

¶20    As these cases illustrate, the mootness doctrine is often a central issue in appeals of expired commitment orders.  The results of these appeals often turn on the doctrine, and the law in this area continues to develop.

¶21    Even though R.J.'s initial commitment expired before he filed his notice of appeal and despite the frequency with which appeals like his turn on questions of mootness, R.J.'s opening brief mentions the doctrine only in passing and does not develop any mootness argument.  The discussion of mootness in the opening brief consists of just one footnote with the conclusory assertion that the appeal is not moot because "the commitment has been extended and because the collateral consequences of a commitment remain even after an individual is no longer under a commitment."  R.J.'s opening brief does not contend that his case is distinguishable from ***J.W.K.***, which, like his case, concerned an appeal of an

---

[9] *See also* ***S.L.L.***, 387 Wis. 2d 333, ¶41 (concluding that no mootness exception applied in a challenge to the sufficiency of the evidence supporting commitment).

expired commitment order that had been replaced by a subsequent order. It does not identify any specific collateral consequences that continue to apply to R.J. as a result of his initial commitment order, as the appellant did in **D.K**. Nor does it advance any argument about why I should reach the merits of the appeal even if I conclude that it is moot. *See **D.J.W.***, 391 Wis. 2d 231, ¶26 n.5.

¶22     In its response brief, the County points out that the order that R.J. is appealing has expired, and it addresses the conclusory argument that R.J. made in his opening brief. Regarding R.J.'s assertion that his "commitment has been extended," the County cites ***J.W.K.***'s rule that in commitment proceedings, "the sufficiency of the evidence supporting prior orders has no impact on any subsequent order." ***J.W.K.***, 386 Wis. 2d 672, ¶21. And regarding R.J.'s assertion about unspecified collateral consequences, the County explains that even if R.J.'s initial commitment order were vacated, his right to possess firearms would not be restored because he is subject to the recommitment order, which he did not appeal, and which also prohibits him from possessing firearms.

¶23     It is not until his reply brief that R.J. attempts to develop any arguments about mootness. He asserts that ***J.W.K.*** is distinguishable because it was a challenge to a recommitment order, rather than an initial commitment order.[10] He also contends that he continues to be subjected to the collateral consequences of the initial order in two ways. First, regarding the firearms ban, he

---

[10] R.J. does not address language in ***J.W.K.*** which appears to be contrary to his position that there is a meaningful distinction between a sufficiency challenge to an initial commitment and a sufficiency challenge to a recommitment. *See **J.W.K.***, 386 Wis. 2d 672, ¶24 ("Each extension hearing requires the County to prove the same elements with the same quantum of proof required for the initial commitment. The dangerousness standard is not more or less onerous during an extension proceeding ....") (citation omitted).

concedes that his recommitment order also prohibits him from possessing firearms but points out that such bans "become[] effective the first time a court adjudicates someone a 'mental defective' or commits him to a mental institution."[11]  Second, R.J. asserts that he "may be liable for the cost of his care, maintenance, services and supplies" under WIS. STAT. § 46.02—an argument explicitly left unresolved in ***D.K.***  Finally, R.J. argues for the first time that even if his appeal is moot, I should nevertheless reach the merits because his case raises questions of substantial importance that often evade appellate review, including the evidence necessary to support a commitment and whether the conduct alleged in a commitment petition must be proved by a witness with firsthand knowledge.

¶24     As a general rule, I do not consider arguments made for the first time in a reply brief.  "It is inherently unfair for an appellant to withhold an argument from its main brief and argue it in its reply brief because such conduct would prevent any response from the opposing party." ***A.O. Smith Corp. v. Allstate Ins. Cos.***, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998).  As shown above, the County squarely addresses the conclusory argument that R.J. makes in his opening brief; then, in his reply brief, R.J. makes complex arguments that go far beyond the County's response.  These arguments touch on difficult questions that have been raised but not resolved in recent opinions of our supreme court, and by waiting until his reply brief to make these arguments, R.J. prevented the County from having any opportunity to be heard on these questions.

---

[11]  If I understand his reasoning, even though R.J. concedes that the recommitment order currently prevents him from owning a firearm, he contends that he continues to suffer the collateral consequence of having been prohibited from owning a firearm during the six months of his initial commitment.  An issue is moot when its resolution would have no "practical effect," and R.J. does not explain how his right to own a firearm for six months in the past would have any practical effect on him now.

¶25     To be sure, in some appeals, there may be unanticipated mootness arguments raised in a response brief, and under such circumstances it might be inequitable to enforce the general rule against addressing arguments made for the first time in a reply brief.  But that is far from the situation here.  As explained above, Wisconsin authority shows that the question of mootness is of obvious and central importance in an appeal from an expired commitment order.  Under these circumstances, I see no reason to resolve the mootness arguments that R.J. makes for the first time in a reply brief.  *Cf.* ***Porco v. Trustees of Indiana Univ*.**, 453 F.3d 390, 395 (7th Cir. 2006) (when events before the appeal made it clear that mootness was at issue, the appellant forfeited mootness arguments by waiting until his reply brief to raise them).

¶26     In sum, because R.J. deprived the County of any opportunity to respond to his mootness argument, I conclude that this appeal of his initial commitment order is moot and decline to reach its merits.  I affirm the circuit court.

        *By the Court.*—Order affirmed.

        This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.