COURT OF APPEALS
DECISION
DATED AND FILED

October 1, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2020AP870-FT**

**STATE OF WISCONSIN**

Cir. Ct. No.  2018ME88

**IN COURT OF APPEALS
DISTRICT IV**

---

IN THE MATTER OF THE MENTAL COMMITMENT OF E.R.R.:

PORTAGE COUNTY,

PETITIONER-RESPONDENT,

V.

E. R. R.,

RESPONDENT-APPELLANT.

---

APPEAL from orders of the circuit court for Portage County: ROBERT J. SHANNON, Judge. *Reversed and cause remanded with directions*.

¶1    FITZPATRICK, P.J.[1]    E.R.R. appeals orders of the Portage County Circuit Court extending his involuntary commitment and requiring E.R.R. to undergo treatment and take prescribed medication pursuant to WIS. STAT. ch. 51. E.R.R. contends that, in regard to the extension of the involuntary commitment, Portage County failed to establish by clear and convincing evidence that he is "dangerous," as required by WIS. STAT. § 51.20(1)(a)2., (1)(am), and (13)(e) and (g)3.  I agree with E.R.R. that the evidence is insufficient to support the circuit court's order extending E.R.R.'s involuntary commitment and reverse that order as well as the order for involuntary treatment and medication, and remand with directions that those two orders be vacated.[2]

## BACKGROUND

¶2    There is no dispute concerning the following material facts.

¶3    E.R.R. suffers from a schizoaffective disorder with symptoms including delusional thinking, grandiose delusions, and disorganized thoughts. E.R.R. was involuntarily committed for six-months by order dated July 31, 2018.

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2017-18). E.R.R. filed a notice of appeal on May 8, 2020, appealing the circuit court orders of January 13, 2020.  In a July 16, 2020 order, this court placed this case on the expedited appeals calendar, and the parties have submitted memo briefs.  See WIS. STAT. RULE 809.17.  Briefing was complete on September 11, 2020.  The briefs were sent to this court by the Clerk of the Court of Appeals on September 14, 2020, and I was randomly assigned this matter on September 16, 2020.  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2]  The County does not dispute that, if the involuntary recommitment order is reversed, the involuntary treatment and medication order must also be reversed.  See WIS. STAT. § 51.61(1)(g)3.  For that reason, I need not address E.R.R.'s arguments concerning the order for involuntary treatment and medication and will not further discuss the treatment and medication order.  See *Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (stating that, if a decision on one point disposes of the appeal, the court will not decide other issues raised).

By order dated January 25, 2019, E.R.R.'s involuntary commitment was extended for twelve months.

¶4    In December 2019, Portage County filed an Application for Extension of Commitment seeking to extend E.R.R.'s involuntary commitment for an additional twelve months, and that application was tried to the circuit court in January 2020.  Near the end of the evidentiary hearing, the circuit court found that E.R.R. has a mental illness and is a proper subject for treatment.  The circuit court concluded that there is a substantial likelihood that E.R.R. "would pose a threat or danger to himself" if treatment is withdrawn.  Based on those findings and that conclusion, the circuit court entered an order on January 13, 2020, extending E.R.R.'s involuntary commitment for a period of twelve months.  E.R.R. appeals.

¶5    Additional material facts, including relevant evidentiary hearing testimony, is mentioned in the discussion below.

## DISCUSSION

¶6    E.R.R. challenges the circuit court's order for the extension of his involuntary commitment and asserts that the County failed to show by clear and convincing evidence that E.R.R. is "dangerous" within the meaning of WIS. STAT. § 51.20(1)(a)2. and (1)(am).  Before addressing that issue, I briefly explain the standard of review and the statutory framework for the extension of an involuntary commitment.

### I.  Standard of Review and the Statutory Framework for the Extension of an Involuntary Commitment.

¶7    Review of a WIS. STAT. ch. 51 involuntary commitment presents a mixed question of fact and law.  This court upholds a circuit court's findings of

fact unless those are clearly erroneous. *Waukesha Cnty. v. J.W.J.*, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783. Whether those facts fulfill the statutory requirements for an involuntary commitment presents a question of law that this court reviews de novo. *Id.* "A determination of dangerousness [in the context of a ch. 51 commitment] is not a factual determination, but a legal one based on underlying facts." *Langlade Cnty. v. D.J.W.*, 2020 WI 41, ¶47, 391 Wis. 2d 231, 942 N.W.2d 277.

¶8      Under WIS. STAT. § 51.20(1)(a), a circuit court may order the initial commitment of an individual if the petitioner shows, by clear and convincing evidence, that the individual is:

    (1)  mentally ill;

    (2)  a proper subject for treatment; and

    (3) currently dangerous under one of five alternative dangerousness standards in the statutory subpart.

*See* § 51.20(1)(a)1.-2. and (13)(e); *Portage Cnty. v. J.W.K.*, 2019 WI 54, ¶17, 386 Wis. 2d 672, 927 N.W.2d 509. With regard to the third element noted above, § 51.20(1)(a)2.a.-e. identifies five different means of demonstrating dangerousness, each of which includes a requirement of recent acts or omissions establishing that the individual is a danger to himself or others. *See* § 51.20(1)(a)2.a.-e.; *D.J.W.*, 391 Wis. 2d 231, ¶30; *J.W.K.*, 386 Wis. 2d 672, ¶17.

¶9      Once an individual is subject to a WIS. STAT. ch. 51 commitment order, the petitioner (in this case, Portage County) may petition for an extension of that commitment under WIS. STAT. § 51.20(13)(g)3. *See J.W.K.*, 386 Wis. 2d 672, ¶18. In order for the extension to be granted, the County must again prove by

clear and convincing evidence that the individual is: (1) mentally ill; (2) a proper subject for treatment; and (3) dangerous.[3] *See* § 51.20(1)(a) and (am), (13)(e) and (g)3.; *J.W.K.*, 386 Wis. 2d 672, ¶¶18, 24. Proof of the third element, dangerousness, is the point at which an initial commitment and a recommitment may materially differ. On a petition for recommitment, the petitioner may show that the individual is dangerous under § 51.20(1)(am). *See J.W.K.*, 386 Wis. 2d 672, ¶19 (stating that § 51.20(1)(am) "provides a different avenue for proving dangerousness").

¶10 WISCONSIN STAT. § 51.20(1)(am) provides in relevant part:

> If the individual has been the subject of inpatient treatment for mental illness ... immediately prior to commencement of the proceedings as a result of ... a commitment or protective placement ordered by a court under this section ... the requirements of a recent overt act, attempt or threat to act under par. (a)2.a. or b., pattern of recent acts or omissions under par. (a)2.c. or e., or recent behavior under par. (a)2.d. may be satisfied by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn.

¶11 Our supreme court instructs that WIS. STAT. § 51.20(1)(am) "recognizes that an individual receiving treatment may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior, but if treatment were withdrawn, there may be a substantial likelihood such behavior would recur." *D.J.W.*, 391 Wis. 2d 231, ¶33 (quoting *J.W.K.*, 386 Wis. 2d 672, ¶19). Current dangerousness remains an

---

[3] E.R.R. does not dispute that the County has presented sufficient proof that he has a mental illness and is a proper subject for treatment. So, this opinion will focus on sufficiency of the evidence regarding dangerousness.

element to be proven to support the extension of an involuntary commitment, but § 51.20(1)(am) "functions as an alternative evidentiary path" for showing dangerousness, "reflecting a change in circumstances occasioned by an individual's commitment and treatment" and "acknowledg[ing] that an individual may still be dangerous despite the absence of *recent* acts, omissions, or behaviors exhibiting dangerousness outlined in § 51.20(1)(a)2.a.-e." ***J.W.K.***, 386 Wis. 2d 672, ¶¶19, 24 (emphasis added); *accord* ***D.J.W.***, 391 Wis. 2d 231, ¶34. Put another way, one of the standards for dangerousness set by § 51.20(1)(a)2.a.-e. is required to be established for the commitment extension to be granted, but the standard may be proved "through the lens of § 51.20(1)(am)." ***D.J.W.***, 391 Wis. 2d 231, ¶50.

## II. Analysis.

¶12 E.R.R. contends that the County failed to establish by clear and convincing evidence that he is dangerous. I begin by recounting the circuit court's findings and conclusions.[4]

### A. Circuit Court Findings and Conclusion, and the County's Abandonment of That Conclusion.

¶13 Near the end of the evidentiary hearing, the circuit court found and concluded as follows regarding E.R.R.'s dangerousness. E.R.R. "requires treatment to further his recovery from his illness" and that "in the absence of treatment … it is substantially likely or probable that [E.R.R.'s] illness would

---

[4] The facts, testimony and arguments in this appeal are substantially and materially different than the facts, testimony and argument at issue in E.R.R.'s prior appeal to this court. *See **Portage Cnty. v. E.R.R.***, No. 2019AP2033, unpublished slip op. (WI App May 21, 2020).

worsen, and the progress that he's made thus far would be reversed." Based on these facts, the circuit court concluded that E.R.R. "would pose a threat or danger to *himself* if he were not being assisted in terms of management of his illness and his current treatment plan." (Emphasis added.) The parties do not dispute that the circuit court's conclusion just mentioned is a reference to the standard enunciated in WIS. STAT. § 51.20(1)(a)2.c. Pertinent to this appeal, a person is dangerous within the meaning of § 51.20(1)(a)2.c. if the individual has "such impaired judgment ... that there [is] a substantial probability of physical impairment or injury to himself." Sec. 51.20(1)(a)2.c. As noted, § 51.20(1)(am) permits the establishment of the dangerousness standards by evidence that such conduct is substantially likely to recur if treatment is withdrawn, and the parties do not dispute that the circuit court referred to the § 51.20(1)(a)2.c. standard "through the lens" of § 51.20(1)(am). *See D.J.W.*, 391 Wis. 2d 231, ¶¶33, 50.

¶14    E.R.R. argues that the evidence introduced at the recommitment hearing is insufficient to support the circuit court's conclusion that he is "dangerous" within the meaning of WIS. STAT. § 51.20(1)(a)2.c. and (1)(am). On appeal the County abandons the circuit court's approach and fails to point to any evidence establishing dangerousness within the meaning of WIS. STAT. § 51.20(1)(a)2.c. In other words, the County does not argue in this appeal that the circuit court's conclusion that there is a substantial likelihood that, if treatment is withdrawn, E.R.R.'s judgment will be impaired such that E.R.R. will cause himself harm is supported by the evidence. Arguments asserted by the appellant and not disputed by the respondent may be taken as admitted. *See Fischer v. Wisconsin Patients Comp. Fund*, 2002 WI App 192, ¶1 n.1, 256 Wis. 2d 848, 650 N.W.2d 75.

¶15   Accordingly, I conclude that the evidence adduced at the pertinent recommitment hearing is not sufficient to establish that E.R.R. is dangerous within the meaning of WIS. STAT. § 51.20(1)(a)2.c. and (1)(am).

## B.  The County's New Argument.

¶16   The County shifts ground on appeal and argues that the recommitment order should be affirmed because I should "find that the circuit court implicitly accepted" the testimony of a social worker and the "conclusions" of a psychiatrist so that I can conclude that the "dangerousness standard [is] met under WIS. STAT. § 51.20(1)(a)2.b., combined with § 51.20(1)(am)."  For context, I note that a person is dangerous within the meaning of § 51.20(1)(a)2.b., in combination with (1)(am), if a person would "[e]vidence[] a substantial probability of physical harm to other individuals" if treatment were withdrawn.  *See* § 51.20(1)(a)2.b. and (1)(am).  The problem for the County is that, for the reasons that follow, the record does not support its argument.

¶17   First, as pointed out by E.R.R., the circuit court did not conclude that E.R.R. is dangerous within the meaning of WIS. STAT. § 51.20(1)(a)2.b. and (1)(am).  The fact that the circuit court did not reach the conclusion the County now requests must not be ignored and makes a difference in a review of the sufficiency of the evidence.  The question of whether the circuit court needs to make factual findings to support a legal conclusion on dangerousness was recently addressed by our supreme court in *D.J.W.*  The court held that such a requirement "is manifest in the language of [] § 51.20(1)(am), which references the dangerousness pathways of § 51.20(1)(a)2."  *D.J.W.*, 391 Wis. 2d 231, ¶41.  One of the purposes of making specific factual findings to support a legal conclusion of dangerousness is to "provide[] clarity and extra protection to patients regarding the

8

underlying basis for a recommitment." *Id.*, ¶42. "The United States Supreme Court 'repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection.'" *Id.* (quoting *Addington v. Texas*, 441 U.S. 418, 425 (1979)).[5]

¶18 Second, I now discuss the testimony the County points to in support of its argument that the evidence is sufficient to establish E.R.R.'s dangerousness under WIS. STAT. § 51.20(1)(a)2.b. and (1)(am). Dr. Bababo Opaneye, a psychiatrist with Portage County Human Services, testified to the following at the January 2020 evidentiary hearing. He examined E.R.R. on two or three occasions and reviewed "other records related to [E.R.R]." E.R.R. has been diagnosed with schizoaffective disorder, and E.R.R.'s symptoms of that mental illness are "grandiosity, having special abilities, special power[,] … mood issues, coupled with psychosis." E.R.R. has "limited insight … [into] his mental health condition and also the need for continuous compliance with treatment [and taking medication]." Dr. Opaneye opined that, without treatment in the form of medication, E.R.R. would "decompensate," meaning that he would become "increasingly psychotic, increasingly disorganized … to the extent that he is going beyond boundary so it's affecting the community." E.R.R. had, however, been compliant with his commitment over the past year, and Dr. Opaneye did not

---

[5] In *Langlade Cnty. v. D.J.W.*, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277, the supreme court held that "going forward circuit courts in recommitment proceedings are to make specific factual findings with reference to the subdivision paragraph of [WIS. STAT.] § 51.20(1)(a)2. on which the recommitment is based." *Id.*, ¶40. The County correctly points out that *D.J.W.* was decided *after* the evidentiary hearing in the present case. However, the requirement "going forward" that circuit courts reference the subdivision paragraphs of § 51.20(1)(a)2. on which recommitment is grounded is not the basis for this part of my analysis. Rather, the requirement of basing the legal conclusion about dangerousness on factual findings made by the circuit court has always been present in the statute, and that discussion in *D.J.W.* is applicable in this appeal. *See id.*, ¶¶41-43.

observe E.R.R. "display[] any behavior that would be harmful to himself" or "witness any behavior that would suggest that [E.R.R.] would be a danger to others."

¶19    A social worker with Portage County Health and Human Services testified to the following at the evidentiary hearing.  While undergoing treatment at a residential facility, E.R.R. stated that he "felt like he wanted to snap people's necks."  The social worker answered in the affirmative when asked if "there have been issues and risks throughout the past year of [E.R.R.'s] commitment," but did not explain what the "issues and risks" were.

¶20    I agree with E.R.R. that the evidence pointed to by the County is not sufficient to establish by clear and convincing evidence that there is a substantial likelihood that E.R.R. will cause physical harm to others if treatment were withdrawn.  "[T]he plain language of WIS. STAT. § 51.20(1)(a)2.b. requires a showing that it is much more likely than not that the individual will cause physical harm to other individuals." *Marathon Cnty. v. D.K.*, 2020 WI 8, ¶42, 390 Wis. 2d 50, 937 N.W.2d 901.  Also, this court has recently discussed the need for the evidence of dangerousness to be more than speculation.  "[I]t could be a winning argument against recommitment that dangerous statements or conduct are old enough, weak enough, or otherwise insufficient to support clear and convincing evidence under the substantial likelihood of dangerousness test."  *Winnebago Cnty. v. S.H.*, 2020 WI App 46, ¶13 n.6; 393 Wis. 2d 511, 947 N.W.2d 761 (quoting *Jefferson Cnty. v. M.P.*, No. 2019AP2229-FT, unpublished slip op. ¶16 (Mar. 5, 2020).

¶21    The circuit court clearly accepted Dr. Opaneye's opinion that E.R.R. remains in continuing need of treatment.  However, the testimony of Dr. Opaneye

does not contain evidence that E.R.R. will "much more likely than not" cause physical harm to others if treatment is withdrawn and, of course, the circuit court did not come to that conclusion. *See **D.K.***, 390 Wis. 2d 50, ¶42. Just as importantly, there is nothing in the record to support the County's assertion that the circuit court "implicitly accepted" the testimony of the social worker. I will not, and cannot, act as the finder of fact to fill in the gaps in the County's argument. Beyond that, there was no testimony at the evidentiary hearing that E.R.R. attempted, or will attempt, to act on his feelings or has otherwise exhibited behaviors that would suggest that he will physically harm other individuals if treatment were withdrawn. In short, E.R.R.'s statement reported by the social worker (even if accepted as true by the circuit court – and it was not), in combination with evidence that he continues to need treatment, does not equate with a "substantial probability" that E.R.R. will cause "physical harm to other individuals" if treatment were withdrawn. *See* § 51.20(1)(a)2.b.

¶22 Accordingly, I conclude that the evidence introduced at the recommitment hearing is insufficient to support a conclusion that E.R.R. is dangerous under WIS. STAT. § 51.20(1)(a)2.b. and (1)(am).

## CONCLUSION

¶23 For the foregoing reasons, the orders of the circuit court are reversed and the cause is remanded to the circuit court with directions to vacate the two orders that are the subject of this appeal.[6]

*By the Court.*—Orders reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[6] In the context of a WIS. STAT. ch. 51 commitment proceeding, our supreme court has stated: "If we reviewed the evidentiary basis for the Extension Order and found it lacking, the proper response would be to reverse … and direct vacatur of the order." *Waukesha Cnty. v. S.L.L.*, 2019 WI 66, ¶40, 387 Wis. 2d 333, 929 N.W.2d 140. Therefore, I follow the instruction of the supreme court regarding remand directions.