**COURT OF APPEALS
DECISION
DATED AND FILED**

**January 25, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.   **2022AP1281**

Cir. Ct. No. **2022ME134**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT II**

IN THE MATTER OF THE MENTAL COMMITMENT OF D.J.S.:

WINNEBAGO COUNTY,

   PETITIONER-RESPONDENT,

 V.

D.J.S.,

   RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Winnebago County: SCOTT C. WOLDT, Judge. *Affirmed.*

¶1    GUNDRUM, P.J.[1] D.J.S. appeals from orders of the circuit court extending his involuntary commitment under WIS. STAT. ch. 51 and ordering the involuntary administration of medication and treatment during that time.[2] He asserts that at the evidentiary hearing on Winnebago County's petition to extend his commitment, the County presented insufficient evidence to establish that he was dangerous under WIS. STAT. § 51.20(1)(a)2.c. and the court's factual findings were "clearly erroneous and failed to meet the statutory definition of dangerous." For the following reasons, we disagree and affirm.

## *Background*

¶2    Winnebago County Department of Human Services staff psychiatrist Michael Vicente was the only witness to testify at the May 10, 2022 hearing on the County's petition, and he provided the following relevant testimony.

¶3    Vicente had been D.J.S.'s treating psychiatrist since 2015, had an opportunity to examine D.J.S. as recently as March 25, 2022, and reviewed his treatment records prior to the hearing. Vicente opined to a reasonable degree of medical certainty that D.J.S. suffers from schizophrenia, which Vicente described as "a substantial disorder of thought and perception," and added that D.J.S.'s condition "grossly impair[s] his judgment, behavior, and capacity to recognize reality." Vicente agreed that if D.J.S.'s treatment was to be withdrawn, he would become a proper subject for commitment, explaining that "[w]hen [D.J.S.] has not

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] Although D.J.S. appeals from both orders, he does not challenge the involuntary administration of medication and treatment order separately. We also do not separately address the medication and treatment order except to note that our decision also applies to that order.

been under commitment … he … hears auditory hallucinations that inform him to do things and, through those hallucinations and instructions by the hallucinations, he puts himself in dangerous situations." Vicente specifically noted an episode in August 2021 in which D.J.S.'s parents, with whom D.J.S. lives, had called the police because D.J.S. "was found wandering on a highway, [and] would not respond to the police officers that had arrived on the scene [or] his parents who he was vacationing with at the time." With regard to this incident, Vicente further indicated he believed D.J.S. had entered into traffic lanes. Vicente stated that "similar things have happened where these influences have commanded [D.J.S.] to do things," specifically pointing out an additional incident from D.J.S.'s "history" when, in approximately September of 2017, D.J.S. "tried to get into someone else's house at 11:30 at night because the voices were telling him that the people didn't belong there." Vicente indicated he was requesting authority to involuntarily medicate D.J.S. with psychotropic medication, agreeing that such medication would have therapeutic value for D.J.S.

¶4    Following Vicente's testimony, the circuit court found that D.J.S. is "suffering from major mental illness, mainly schizophrenia," and if treatment were withdrawn, he "would become the proper subject for commitment." "Under the C Standard," the court stated, "there is a pattern here of [D.J.S.] going on and off medications and him decompensating when he's off medication and doing things that are dangerous to himself." The court expressed that "it's reasonable to assume that his parents wouldn't have called the police on [D.J.S.] for wandering near a highway. I think they would call the police if he was in danger and that's why they did it and that's why the police brought him home, because he was in danger." The court ordered D.J.S.'s commitment extended, and D.J.S. appeals.

*Discussion*

¶5     An individual is a proper subject for a recommitment under WIS. STAT. § 51.20(1) if the County proves by clear and convincing evidence that the individual is mentally ill, a proper subject for treatment, and dangerous. *See Langlade County v. D.J.W.*, 2020 WI 41, ¶31, 391 Wis. 2d 231, 942 N.W.2d 277. D.J.S. does not dispute the circuit court's conclusions that he is mentally ill and a proper subject for treatment. He insists, however, that the court erred in concluding the County met its burden to prove he is dangerous. We disagree.

¶6     Whether the County met its burden presents a mixed question of law and fact. *See Waukesha County v. J.W.J.*, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783. "[W]e will uphold a circuit court's findings of fact unless they are clearly erroneous," *D.J.W.*, 391 Wis. 2d 231, ¶24, and "we accept reasonable inferences from the facts," *Winnebago County v. Christopher S.*, 2016 WI 1, ¶50, 366 Wis. 2d 1, 878 N.W.2d 109 (citation omitted). "[W]hether the facts satisfy the statutory standard" of dangerousness, however, is a question of law we review independently. *D.J.W.*, 391 Wis. 2d 231, ¶¶25, 47. On appeal, D.J.S. has the burden to show that the circuit court erred. *See Gaethke v. Pozder*, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381.

¶7     As relevant to this appeal, an individual is dangerous if the individual "[e]vidences such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself." WIS. STAT. § 51.20(1)(a)2.c. However, an individual receiving treatment may not have evidenced any recent acts or omissions of dangerousness "because the treatment ameliorated such behavior," and thus, in the context of a recommitment, the County may instead show a

4

substantial likelihood of dangerousness if treatment were withdrawn. ***D.J.W.***, 391 Wis. 2d 231, ¶¶32-33 (citation omitted). Accordingly, WIS. STAT. § 51.20(1)(am) provides in relevant part:

> [I]f the individual has been the subject of outpatient treatment for mental illness … immediately prior to commencement of the proceedings as a result of a commitment ordered by a court under this section ... the requirement[] of a ... *pattern of recent acts or omissions* under par. (a)2.c. ... may be satisfied by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn.

(Emphasis added.) Of note, paragraph (1)(am) only provides for a substitute method of "satisf[ying]" the subd. para. (1)(a)2.c. requirement of "a … pattern of recent acts or omissions"; it does not undermine other aspects of subd. para. (1)(a)2.c. *See **D.J.W.***, 391 Wis. 2d 231, ¶¶32-34. Thus, if using this alternative method of proving dangerousness, the County would need to prove by clear and convincing evidence "a substantial likelihood, based on [D.J.S.'s] treatment record, that [he] would be a proper subject for commitment if treatment were withdrawn," meaning, as relevant to this case, that "there is a substantial probability of physical impairment or injury" to D.J.S. if treatment were withdrawn. *See* § 51.20(1)(am), (1)(a)2.c.

¶8　　D.J.S. asserts the County "did not show by clear and convincing evidence[] that [his] judgment was so impaired, as manifested by evidence of a pattern of acts or omissions, that there is a substantial probability of physical impairment or injury to himself or others if treatment were withdrawn." He claims

> the [C]ounty offered no evidence of … any instance during which D.J.S. stopped taking a prescribed medication. The only evidence offered regarding D.J.S. possibly not being on medication was Dr. Vicente's testimony that D.J.S. "was

5

> not under treatment" in "approximately" September 2017. This simply does not establish that D.J.S. ever went off any prescribed medications, that he would decompensate when he went off medications, or that he [had] done dangerous things after going off any medications.

While it certainly would have been better if the County had presented more evidence and the circuit court had been more detailed and specific in its oral determination, we conclude the County nonetheless met its burden.

¶9    Vicente testified he has been D.J.S.'s treating psychiatrist for seven years and D.J.S. suffers from schizophrenia—"a substantial disorder of thought and perception," which "grossly impair[s] his judgment, behavior, and capacity to recognize reality."[3]  Benefitting from his history as D.J.S.'s treating psychiatrist, when asked why he checked "the C box"[4] on the petition for the extension of D.J.S.'s commitment, Vicente explained that "*[w]hen [D.J.S.] has not been under commitment … he … hears auditory hallucinations that inform him to do things and, through those hallucinations and instructions by the hallucinations, he puts himself in dangerous situations.*"  (Emphasis added.)  Use of the plural here indicates Vicente's knowledge of more than just one instance in which D.J.S. was

---

[3] In his brief-in-chief, D.J.S. drops brief critiquing references to the County presenting "hearsay" evidence at the hearing, but he fails to develop any hearsay argument.  Only in his reply brief does he attempt to develop an argument that the circuit court erred in relying on Vicente's testimony because it included hearsay.  Also, at the hearing, D.J.S. did not object—on hearsay or any other grounds—to any of the testimony presented to the court.  Because he did not object on hearsay grounds before the circuit court and failed to even raise a hearsay argument in his brief-in-chief on appeal, we do not consider any "hearsay" issue. *See **Allen v. Allen***, 78 Wis. 2d 263, 270, 254 N.W.2d 244 (1977) ("A failure to make a timely objection constitutes a [forfeiture] of the objection."); ***A.O. Smith Corp. v. Allstate Ins. Cos.***, 222 Wis. 2d 475, 492-93, 588 N.W.2d 285 (Ct. App. 1998) (stating that an appellate court will not address arguments raised for the first time in a reply brief).

[4] The "C box" on the petition refers to WIS. STAT. § 51.20(1)(a)2.c., which is the "Third Standard" for proving dangerousness.  *See* WIS. STAT. § 51.20(1)(a)2.c., (1)(am); *see also **Sauk County v. S.A.M.***, 2022 WI 46, ¶32, 402 Wis. 2d 379, 975 N.W.2d 162.

"not … under commitment" and heard "auditory hallucinations that inform[ed] him to do things [that put him] in dangerous situations." In fact, the nature of the comments appears to intimate awareness of several such instances.

¶10 Vicente detailed two specific examples, one of which was an "episode" in August 2021, eight months prior to the hearing. In that incident, D.J.S.'s parents, with whom D.J.S. lived, called the police while they were on vacation with D.J.S. because D.J.S. "was found wandering on the highway." D.J.S., who Vicente believes had entered into traffic lanes, would not respond to either his parents or the police officers on the scene. Wandering on the highway, and particularly entering into traffic lanes, is a dangerous scenario, not only for D.J.S. but also for any motorists who may be traveling along the highway. Being in a mental state where he is nonresponsive to either his parents or the police only adds to the danger.

¶11 When asked if this "wandering on the highway" incident was "primarily why [he] checked the C box," Vicente replied, "Yes" but added that "[g]iven [D.J.S.'s] history, similar thing*s* have happened where these influences have commanded [D.J.S.] to do thing*s*."[5] (Emphasis added.) Providing another example, from 2017, Vicente explained that D.J.S. "tried to get into someone else's house at 11:30 at night because the voices were telling him that the people didn't belong there." Vicente added that D.J.S. "was not under treatment at the time."

---

[5] Again, use of the plural "things" suggests Vicente's awareness of more than one incident in addition to the highway incident.

¶12 Related to this incident, D.J.S. contends in his brief-in-chief that "[k]nocking on someone's door, regardless of the time of day, is not an inherently dangerous action." D.J.S. overlooks or diminishes key details. First, it would be concerning to any home occupant to have a stranger knocking on his/her door at 11:30 p.m. Second, the information from Vicente is that "the voices" were telling D.J.S. "that the people didn't belong there." One can easily infer from this that when he knocked on the strangers' door, D.J.S. did so with a confrontational mindset; otherwise, why would he knock on the door when the voices told him the people at the home "didn't belong there." While the testimony at the hearing did not provide greater detail, the circumstances in this incident were ripe for a concerning 11:30 p.m. confrontation at the door of this home.

¶13 While the circuit court appeared to meld together WIS. STAT. § 51.20(1)(a)2.c. and (1)(am) in its oral ruling extending commitment, it determined at a minimum that the County established dangerousness under (1)(am), stating "if treatment were currently withdrawn, [D.J.S.] would become the proper subject for commitment" and then immediately thereafter implicitly referring back to the two noted incidents of a dangerous nature that D.J.S. engaged in when he was "off medication," as suggested by Vicente's testimony. The totality of the evidence, *see **Marathon County v. D.K.***, 2020 WI 8, ¶51, 390 Wis. 2d 50, 937 N.W.2d 901 (we consider dangerousness evidence from commitment hearings "as a whole"), supports the court's determination. Vicente testified that when D.J.S. is not the subject of treatment, his judgment is so impaired that there is "a substantial probability of physical ... injury to himself." *See* § 51.20(1)(a)2.c.

¶14 The circuit court stated that "based upon the testimony and evidence presented to the Court," D.J.S. "is suffering from major mental illness, mainly

8

schizophrenia" and added that "if treatment were currently withdrawn, he would become the proper subject for commitment." The court continued, "[u]nder the C Standard there is a pattern here of [D.J.S.] going on and off medications and him decompensating when he's off medication and doing things that are dangerous to himself."[6] Given Vicente's related testimony, the court's obvious inference that Vicente was referring to "medication" as part of D.J.S.'s "commitment" and "treatment" when he referenced D.J.S. "not be[ing] under commitment" and "not [being] under treatment" was not an unreasonable inference. This is so because the totality of the testimony suggests that when he referred to "commitment" and "treatment," Vicente was including "medication" in those terms, particularly since it is reasonable to infer that it would be the absence of "medication" that would be the change in circumstance for D.J.S. leading to him "hear[ing] auditory hallucinations." Contrary to D.J.S.'s above position that the evidence did not show "that D.J.S. ever went off any prescribed medications, that he would decompensate when he went off medications, or that he [had] done dangerous things after going off any medications," we conclude the circuit court reasonably inferred that the evidence did show all of this. Furthermore, as the County points out, "neither case law nor statute require a circuit court to make medication-specific findings before ruling on an extension of commitment." As the County

---

[6] We note further that in its order of recommitment, the circuit court found that D.J.S.'s "dangerousness … is likely to be controlled with appropriate medication administered on an outpatient basis." It also found, in its order for involuntary medication and treatment, that "[m]edication or treatment will have therapeutic value," D.J.S. "is not competent to refuse psychotropic medication or treatment" because he is "substantially incapable of applying an understanding of the advantages, disadvantages, and alternatives to his … condition in order to make an informed choice as to whether to accept or refuse psychotropic medications or treatment," and "the medication or treatment is necessary to prevent serious physical harm to [D.J.S.]."

9

adds, "the [c]ourt made all of the necessary statutory findings and did so based upon the evidence before it."

¶15 For the foregoing reasons, we conclude the circuit court did not err in ordering an extension of D.J.S.'s commitment and the involuntary administration of medication and treatment during that extension.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.