COURT OF APPEALS
DECISION
DATED AND FILED

**January 22, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP853**

**STATE OF WISCONSIN**

Cir. Ct. No. 2023ME9

**IN COURT OF APPEALS
DISTRICT III**

IN THE MATTER OF THE MENTAL COMMITMENT OF C. N. S.:

PRICE COUNTY,

    PETITIONER-RESPONDENT,

  V.

C. N. S.,

    RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Price County: KEVIN G. KLEIN, Judge. *Order affirmed; order reversed.*

¶1 STARK P.J.[1] Cynthia[2] appeals orders extending her involuntary commitment pursuant to WIS. STAT. § 51.20 and for her involuntary medication and treatment pursuant to WIS. STAT. § 51.61(1)(g). Cynthia argues that (1) Price County failed to prove that she is dangerous under § 51.20(1)(a)2.; (2) the circuit court failed to specify the basis under § 51.20(1)(a)2.a.-e. for its finding that she is dangerous, as mandated by our supreme court in *Langlade County v. D.J.W.*, 2020 WI 41, ¶40, 391 Wis. 2d 231, 942 N.W.2d 277; and (3) the County failed to present sufficient evidence that she is not competent to refuse medication and treatment.

¶2 The County concedes that it presented insufficient evidence to prove that Cynthia is not competent to refuse medication and treatment. Therefore, pursuant to WIS. STAT. § 51.61(1)(g), we reverse the order allowing for the involuntary administration of her medication and treatment. However, for the reasons that follow, we conclude that the County presented sufficient evidence of Cynthia's dangerousness and that the circuit court complied with the *D.J.W.* mandate. Accordingly, we affirm the order extending Cynthia's involuntary commitment.

## BACKGROUND

¶3 In July 2023, Cynthia was emergently detained, pursuant to WIS. STAT. § 51.15, after she admitted to taking multiple prescription drugs at once with the intent of killing herself. The circuit court held a hearing later that month to determine whether there was probable cause to have Cynthia involuntarily

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than her initials.

committed under WIS. STAT. § 51.20. The court found probable cause to believe that Cynthia was mentally ill, a proper subject for treatment, and dangerous to herself or others. The court then ordered that Cynthia be evaluated by two examiners and it scheduled a final hearing for August 2023.

¶4 Prior to the final hearing, Cynthia stipulated that she was mentally ill, a proper subject for treatment, and dangerous "under [WIS. STAT.] § 51.20(1)(a)2.a. or b." Based on these stipulations, the circuit court entered an order for Cynthia's commitment. The order stated that, depending on need, the maximum level of treatment would be a locked inpatient facility and that the commitment would last for six months. The court did not enter an order for the involuntary administration of her medication and treatment under WIS. STAT. § 51.61(1)(g).

¶5 In August 2023, staff at Cynthia's treatment facility became concerned about symptoms that Cynthia was exhibiting, and they had her taken to a medical center. At the medical center, Cynthia tested positive for tetrahydrocannabinols (THC) and was diagnosed with hepatic encephalopathy, resulting from her THC use in conjunction with her having a stage-four liver disease. While at the medical center, Cynthia made "suicidal comments."

¶6 In September 2023, Cynthia left the medical center against medical advice and was subsequently found drinking alcohol. Prior to the alcohol being taken away from Cynthia, she "attempted to chug it." Cynthia was then transferred to a more restrictive, inpatient treatment facility.

¶7 In December 2023, the County petitioned to have Cynthia's commitment extended. The circuit court found probable cause to extend the commitment; ordered that Cynthia be evaluated by a psychologist, Dr. John Coates; and scheduled a final hearing for January 2024.

¶8 At the final hearing, Dr. Coates testified that he had examined Cynthia, that she suffers from major depressive disorder and alcohol use disorder, and that she is a proper subject for treatment. Coates opined that these conditions create a "substantial probability of serious injury, debilitation, or disease" for Cynthia, as evidenced by her six prior suicide attempts. He explained that there was a substantial probability that Cynthia would become a proper subject for treatment again if treatment were withdrawn because Cynthia would likely cause physical harm to herself due to an increased risk of suicide. Coates also noted that Cynthia had suffered from "life-threatening alcohol withdrawal," "hepatic encephalopathy … due to her alcohol use," and "diabetic ketoacidosis and coma."

¶9 Regarding medication, Dr. Coates opined that Cynthia was "substantially incapable of applying an understanding of the advantages, disadvantages, and alternatives [to medication] to her condition in order to make an informed choice as to whether to accept or refuse those medications" "due to her limited insight and impaired judgment." However, Coates did not provide any further information regarding Cynthia's "limited insight and impaired judgment," and on cross-examination, Coates testified that "perhaps the lightbulb has finally gone on, and she recognizes she needs help, and is appreciative of the help."

¶10 Cynthia testified at the hearing and agreed with her diagnoses of depression and alcohol abuse. She stated that she "really enjoy[ed]" being at the inpatient facility but she found the "level of restriction in care" to be "a bit much." Cynthia explained that prior to her commitment, she had never received treatment for her depression and that since beginning treatment, she noticed that her mood had stabilized, she had increased clarity, and her memory had improved. Cynthia noted that some of the side effects of her treatment were "unpleasant," but she opined that

4

"it's worth it" and stated that she would continue treatment and even voluntarily stay at the facility if the commitment were removed.[3]

¶11     On cross-examination, Cynthia admitted that she had used cannabidiol (CBD) in the preceding six months and that she has a damaged liver. She then stated that she did not know that her damaged liver affected her ability to process the CBD she used. She also acknowledged that she left the medical center against medical advice and that she was subsequently found consuming alcohol. Finally, Cynthia stated that she had consumed THC thirteen days prior to the hearing, that she was hospitalized as a result, and that she was not aware that, due to her damaged liver, her THC use was also contrary to medical advice.

¶12     The circuit court found that Cynthia is mentally ill and a proper subject for treatment. The court cited Cynthia's repeated suicide attempts and ongoing alcohol addiction as well as Dr. Coates' opinion that "if untreated," there would be a risk of self-harm. The court found Cynthia dangerous under WIS. STAT. § 51.20(1)(a)2.a., and found that she would be a proper subject for commitment if treatment were withdrawn under § 51.20(1)(am).[4] The court credited Coates' opinion that Cynthia's mental illnesses affect her behavior, her view of reality, and her ability to "address the ordinary demands of life" and that those effects "could result in injury, or debilitation, or disease." The court specifically credited Coates' opinion that Cynthia's alcohol dependency is "life-threatening," due to "things like

---

[3] Cynthia additionally testified that, at times, she had occasionally refused to take one of her medications—lactulose, which she stated was prescribed for gastrointestinal issues—due to "unpleasant side effects" and its over-effectiveness. The circuit court stated that, due to Cynthia's explanation, it did not find her occasional refusal to take lactulose to be a concern.

[4] The circuit court did not specifically state on the record that it found Cynthia dangerous under WIS. STAT. § 51.20(1)(a)2.a., but, as discussed below, it referenced the language found in that subparagraph during its oral ruling and checked a box in its written order indicating it was finding Cynthia dangerous under § 51.20(1)(a)2.a.

withdrawal symptoms" and "indirect consequences such as diabetes." The court also referenced Cynthia's history of suicidal ideations and inability to abstain from alcohol.

¶13 The circuit court found Cynthia's cross-examination to be "the most telling," citing Cynthia's lack of awareness of how THC and CBD affect her due to her liver disease, her leaving the medical center against medical advice, and her recent relapse with alcohol use. Thus, the court found that, based on her treatment record, Cynthia evidenced a substantial probability of harm to herself, as shown by a pattern of recent acts. The court then entered orders extending Cynthia's commitment and allowing for her involuntary medication and treatment.

¶14 Cynthia now appeals. Additional facts will be provided below as necessary.

## DISCUSSION

¶15 Cynthia first argues that the County presented insufficient evidence to prove that she is not competent to refuse medication. The County agrees.

¶16 At the commitment hearing, the County and Dr. Coates agreed that Cynthia was capable of expressing an understanding of the advantages, disadvantages, and alternatives to medication and treatment. Although Coates questioned Cynthia's ability to apply that understanding, he later acknowledged that perhaps "the lightbulb has finally gone on, and she recognizes she needs help, and is appreciative of the help." Coates did not testify about any objective concern that Cynthia does not have insight into her mental health or her need for treatment and medication. Based upon the County's concession and our review of the record, we conclude that Cynthia is capable of both expressing an understanding of the

6

advantages, disadvantages, and alternatives to medication and treatment and applying that understanding to her condition. We, therefore, reverse the circuit court's order allowing for Cynthia's involuntary medication and treatment.

¶17 Cynthia next argues that the circuit court failed to comply with our supreme court's mandate in *D.J.W.* and that the County presented insufficient evidence of her dangerousness under WIS. STAT. § 51.20(1)(a)2.a. She asserts that the County merely proved at the final hearing that she was dangerous under § 51.20(1)(am) without meeting the requirement of linking her *current* dangerousness to one of the five statutory standards in § 51.20(1)(a)2.a.-e.[5] *See Waupaca County v. K.E.K.*, 2021 WI 9, ¶18, 395 Wis. 2d 460, 954 N.W.2d 366. We conclude that the County presented clear and convincing evidence that Cynthia is dangerous under § 51.20(1)(a)2.a., and although the court did not specifically

---

[5] The County argues that Cynthia forfeited her argument regarding the sufficiency of the evidence by not raising the issue at the final hearing. The County is mistaken. WISCONSIN STAT. § 805.17(4) specifically permits a subject to challenge the sufficiency of the evidence to support the circuit court's findings on appeal "whether or not the party raising the question has objected in the court to such findings." *See Waukesha County v. M.A.C.*, 2024 WI 30, ¶67, 412 Wis. 2d 462, 8 N.W.2d 365.

Notably, the County does not address WIS. STAT. § 805.17(4) or *M.A.C.* The County also does not cite any case in support of its argument that a subject forfeits his or her argument regarding the sufficiency of the evidence when he or she does not raise an objection stating as much at a contested final hearing.

Regardless, the County misunderstands Cynthia's testimony and argument at the final hearing. Cynthia testified that she had been doing well during her initial commitment, had noticed a vast improvement over the course of her commitment, and that she would continue treatment voluntarily if not involuntarily committed. In her closing argument, Cynthia reemphasized these points. While she did not explicitly use the words "insufficient evidence of dangerousness," her testimony and argument clearly challenged the dangerousness prong. We therefore conclude that the issue was not forfeited on appeal.

identify that subparagraph, the court's findings were sufficient under *D.J.W.* to determine the standard under which it found Cynthia dangerous.

¶18 A petitioner seeking to have a subject involuntarily committed via WIS. STAT. ch. 51 bears the burden of proving that the subject meets the requirements for commitment. *Winnebago County v. S.H.*, 2020 WI App 46, ¶8, 393 Wis. 2d 511, 947 N.W.2d 761. Whether the petitioner meets this burden presents a mixed question of fact and law. *Id.*, ¶10. This court upholds the circuit court's findings of fact unless they are clearly erroneous and reviews de novo whether those facts satisfy the statutory requirements. *Id.*

¶19 Specifically, the petitioner must prove by clear and convincing evidence that the subject is: (1) mentally ill, (2) a proper subject for treatment, and (3) dangerous under one of the standards set forth in WIS. STAT. § 51.20(1)(a)2.a.-e.[6] *S.H.*, 393 Wis. 2d 511, ¶8. Additionally, at a hearing for an extension of a commitment, the petitioner may prove dangerousness via the "'alternative evidentiary path' of § 51.20(1)(am)."[7] *S.H.*, 393 Wis. 2d 511, ¶8. However, the petitioner must still prove that the subject is *currently* dangerous; the

---

[6] Cynthia does not contest that she is mentally ill and a proper subject for treatment. We therefore do not further address the evidence regarding those statutory requirements.

[7] WISCONSIN STAT. § 51.20(1)(am) provides, in pertinent part, that

> the requirements of a recent overt act, attempt or threat to act under par. (a)2. a. or b., pattern of recent acts or omissions under par. (a)2. c. or e., or recent behavior under par. (a)2. d. may be satisfied by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn.

standard of dangerousness "is not more or less onerous" at an extension hearing than it is at an initial commitment hearing. *Id.*, ¶9 (citation omitted).

¶20 The circuit court found that Cynthia was dangerous under WIS. STAT. § 51.20(1)(a)2.a., which states that a subject is dangerous if he or she evidences "a substantial probability of physical harm to himself or herself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm." Cynthia was also found dangerous under § 51.20(1)(am). We conclude that the County presented sufficient evidence to support these findings.

¶21 At the final hearing, Dr. Coates testified that Cynthia suffers from a major depressive disorder coupled with an alcohol use disorder. He stated that these conditions affect Cynthia's behavior and her ability to recognize reality and meet the ordinary demands of life. He further stated that Cynthia has been "unable to abstain from using alcohol" even though alcohol use has contributed to "life-threatening medical problems" for her, including "alcohol withdrawal with seizures" and hepatic encephalopathy. Coates opined that Cynthia's alcohol use "could create a substantial probability of serious injury, debilitation, or disease" and that Cynthia could not "properly care for" her medical conditions, including her diabetes, due to her alcohol use.

¶22 Doctor Coates testified that there was a "substantial likelihood" that Cynthia would be at "an increased risk of suicide, alcohol abuse, and life-threatening medical problems" if treatment were withdrawn. Finally, Coates noted that Cynthia had attempted suicide six times. Coates explained that while Cynthia appears to have gained some insight into her medical conditions, her pattern has been to drink alcohol—even though she is aware of both her medical issues from drinking and her depression—and then attempt suicide.

9

¶23    During her testimony, Cynthia agreed that she suffers from alcohol use disorder and testified that she believes that her alcohol use stems from her depression.  She acknowledged that while her commitment was ongoing, she absconded from the medical facility where she was an inpatient and was subsequently found consuming alcohol.  Finally, Cynthia stated that she is still working to overcome her alcohol addiction and is receiving treatment for it.

¶24    The above facts show that Cynthia continues to struggle with her substance abuse and that her continued use of alcohol is life threatening.  Cynthia is aware of the risks that arise from using alcohol in conjunction with her damaged liver and her other medical issues, such as her diabetes, yet Cynthia continues to consume alcohol.  Further, in the past, Cynthia's alcohol consumption has contributed to her depression and led to six suicide attempts, and Cynthia has made suicidal comments as recently as August 2023.  These facts are sufficient to prove that Cynthia is dangerous to herself under WIS. STAT. § 51.20(1)(a)2.a.  *See Vernon County v. F.W.R.*, No. 2024AP203, unpublished slip op. ¶¶11-16 (WI App Nov. 21, 2024) (concluding that "§ 51.20 [a]uthorizes [i]nvoluntary [c]ommitments for [a]lcoholism");[8] *see generally Marathon County v. T.A.T.*, No. 2019AP1709, unpublished slip op. ¶¶34-35 (WI App June 29, 2021); *Waukesha County v. J.W.J.*, 2017 WI 57, ¶¶7-12, 375 Wis. 2d 542, 895 N.W.2d 783.

¶25    These same facts also support Dr. Coates' opinion, and the circuit court's conclusion, that Cynthia would be a proper subject for commitment if treatment were withdrawn.  Thus, she is dangerous under WIS. STAT.

---

[8] Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value.  *See* WIS. STAT. RULE 809.23(3)(b).

§ 51.20(1)(am), in conjunction with § 51.20(1)(a)2.a. Cynthia does not contest that she would be a proper subject for commitment if treatment were withdrawn.

¶26 In addition to asserting that the County failed to prove by clear and convincing evidence that she was dangerous, Cynthia argues that the commitment order should be reversed because the circuit court did not specify the statutory subparagraph of dangerousness, as required by *D.J.W.* In *D.J.W.*, our supreme court stated that "going forward[,] circuit courts in recommitment proceedings are to make specific factual findings with reference to the [subparagraph] of [WIS. STAT.] § 51.20(1)(a)2. on which the recommitment is based." 391 Wis. 2d 231, ¶40. This mandate has two requirements: the court must (1) "make specific factual findings," and (2) "state which dangerousness standard the recommitment is based on." *Sheboygan County v. M.W.*, 2022 WI 40, ¶41, 402 Wis. 2d 1, 974 N.W.2d 733 (Hagedorn, J., concurring).

¶27 While the circuit court did not expressly state in its oral ruling the dangerousness subparagraph upon which the extension was based, we conclude that the court sufficiently identified the pertinent subparagraph. In its oral ruling, the court summarized the testimony from Dr. Coates and Cynthia, noted Cynthia's past attempts at suicide and inability to abstain from alcohol, and it expressed concern regarding Cynthia's lack of understanding about her "situation." The court then stated:

> [Coates] would like to see a longer period of time to make sure that [Cynthia] was not going to cause herself physical harm, or physical impairment or injury, or a substantial probability of death given her circumstances, or serious physical injury or debilitation.
>
> ….
>
> Again, what this clearly and directly shows is a lack of understanding—or I should say a lack of being able to apply

11

> an understanding of the situation, … in a circumstance where doing these things is directly harmful to her own condition, and of course, creates those substantial probabilities of harm that I eluded to earlier.
>
> ….
>
> So the [c]ourt has discussed the probabilities of harm. This is shown by a pattern of recent acts and omissions, and again, the substantial likelihood based on [her] treatment record that [Cynthia] would be a proper subject for commitment if treatment were withdrawn, [and] she is, in fact, a proper subject for treatment.

¶28    The circuit court's oral ruling clearly referenced the wording in WIS. STAT. § 51.20(1)(a)2.a.,—i.e., the court referred to Cynthia's recent actions as evidencing a substantial probability of physical harm to herself. Further, consistent with the testimony referenced by the court in its oral ruling, it identified § 51.20(1)(a)2.a. as the applicable standard of dangerousness in its written order. While the best practice would have been for the court to expressly identify the applicable subparagraph in its oral ruling, it was not required to do so. *See Marathon County v. D.K.*, 2020 WI 8, ¶66, 390 Wis. 2d 50, 937 N.W.2d 901 (Rebecca Bradley, J., concurring) (declining to impose a "magic word requirement" in the context of a § 51.20(1)(a) dangerousness determination and stating that "magic word requirements" are disfavored); *Brown County v. L.M.R.*, No. 2023AP2314, unpublished slip op. ¶¶21-22 (WI App Aug. 6, 2024).

¶29    Accordingly, we conclude that the County provided sufficient evidence to prove Cynthia's dangerousness under WIS. STAT. § 51.20(1)(a)2.a. and § 51.20(1)(am) and that the court sufficiently identified the dangerousness standards on which it relied. We, therefore, affirm the order extending Cynthia's commitment. Because the County concedes that it did not sufficiently prove that

Cynthia is not competent to refuse medication under WIS. STAT. § 51.61(1)(g), we reverse the order allowing for Cynthia's involuntary medication and treatment.

*By the Court.*—Order affirmed; order reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.